**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Children's Health Defense *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Civil Action No. 23-cv-2735 (TJK) |
| | ) | |
| WP Co. LLC *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**<u>SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

PROCEDURAL HISTORY..................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

I.       THE COMPLAINT FAILS TO PLEAD A CONSPIRACY TO
         ACHIEVE AN UNLAWFUL OBJECTIVE. ............................................................. 3

II.      THE COMPLAINT FAILS TO PLEAD SUFFICIENT INJURY. ............................. 7

         A.       The Complaint Fails To Plead That Plaintiffs Suffered Antitrust
                  Injuries. ......................................................................................................... 7

         B.       The Complaint Fails To Plead Injury to Competition. ................................... 8

III.     THE COMPLAINT FAILS TO PLEAD A RESTRAINT OF TRADE..................... 8

         A.       The Complaint Fails To Plead the Elements of a *Per Se* Group
                  Boycott........................................................................................................... 9

                  1.       The Complaint Fails To Allege TNI Members Have a
                           Dominant Position in a Defined, Relevant Market........................... 10

                  2.       The Complaint Fails To Allege Any TNI Members Cut
                           Off Access to Any Facility Necessary To Compete. ........................ 12

                  3.       The Complaint Fails To Allege Facts Demonstrating That
                           the TNI Lacked Any Plausible Procompetitive
                           Justifications. ................................................................................... 12

         B.       The Complaint Fails To Plead a Rule of Reason Violation........................... 14

IV.      THE COMPLAINT FAILS TO PLEAD CONDUCT BY EACH
         DEFENDANT. ........................................................................................................ 15

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES*

## CASES

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213 (D.D.C. 2005)......... *passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... *passim*

*Brink v. Cont'l Cas. Co.*, 2021 WL 7907065 (D.D.C. Dec. 27, 2021) ............................................6

*City of Moundridge v. Exxon Mobil Corp.*, 2009 WL 5385975 (D.D.C. Sept. 30, 2009),
    *aff'd*, 409 F. App'x 362 (D.C. Cir. 2011) ...................................................................................6

*DataCell Ehf v. Visa, Inc.*, 2015 WL 4624714 (E.D. Va. July 30, 2015)........................................7

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253 (D.C. Cir. 1981)......................6

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019),
    *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020) ..................................................................... *passim*

*Freedom Watch Inc. v. Jud. Watch, Inc.*, 289 F. Supp. 3d 1270 (S.D. Fla. 2018).........................7

*FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................11

*FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986).............................................................10, 11

*Gross v. Wright*, 185 F. Supp. 3d 39 (D.D.C. 2016)............................................................ *passim*

*In re McCormick & Co*, 217 F. Supp. 3d 124 (D.D.C. 2016)...................................................14, 15

*In re McCormick & Co.*, 2017 WL 11830269 (D.D.C. June 13, 2017)............................4, 5, 8, 9

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..............13

*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) .......................7, 8

*Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004)........................................15

*Kennedy v. Google LLC*, 2023 WL 5440787 (N.D. Cal. Aug. 23, 2023).......................3, 5, 12, 13

*Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479 (D.C. Cir. 1984).............................6, 10

*Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368 (5th Cir. 2014)................................................4, 5

*Mercola.com, LLC v. Google LLC*, 2023 WL 5680112 (N.D. Cal. Sept. 4, 2023) ....................3, 5

---

\* *Authorities upon which counsel chiefly rely are marked with asterisks.*

*Monsanto Co. v. Spray-Rite Serv. Corp*, 465 U.S. 752 (1984) ...................................................4, 6

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
   472 U.S. 284 (1985)...............................................................................................1, 9, 12, 13

*Peden v. Democratic Nat'l Comm.*, 2020 WL 6384618 (D. Mass. Oct. 30, 2020) ........................7

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412 (5th Cir. 2010)......................14

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
   792 F.2d 210 (D.C. Cir. 1986) ......................................................................9, 10, 11, 12

*Smith v. Pro Football, Inc.*, 593 F.2d 1173 (D.C. Cir. 1978) .......................................................13

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) .........................................................................................11, 15

*United States v. Flynn*, 507 F. Supp. 3d 116 (D.D.C. 2020) ..........................................................6

*Vetzel Moving & Storage, Inc. v. Atlas Van Lines, Inc.*,
   1986 WL 967 (D.D.C. June 20, 1986)...............................................................................13

## INTRODUCTION

Pursuant to the Court's November 2, 2023 Order, Defendants submit this supplemental brief in further support of their pending Motion to Dismiss, which was initially filed in the Western District of Louisiana prior to the transfer to this Court. *See* ECF No. 41-01 (the "Motion").

This lawsuit is an effort by eleven purported original-content news publishers who contend that they were wrongfully sidelined from social media platforms such as Facebook, Instagram, LinkedIn, Twitter (now X), and YouTube (the "Platforms"). Rather than sue those Platforms directly as defendants here, Plaintiffs have instead turned their sights on four news media defendants: The Associated Press ("The AP"), the British Broadcasting Company ("BBC"), Reuters News & Media Incorporated ("Reuters"), and WP Company LLC d/b/a The Washington Post ("the Post") (collectively, "Defendants"). Plaintiffs allege that Defendants, along with other news organizations and the Platforms, participated in an industry information-sharing partnership called the Trusted News Initiative ("TNI"), which had a goal of ensuring credibility in news and combating the spread of disinformation. *See* Compl., ECF No. 1, ¶¶ 3, 262–265; Mot. 5–6. Plaintiffs wrongly attempt to transform this effort into a "group boycott" in violation of the Sherman Act.

For the reasons explained in the Motion and reply in support thereof, this Court should dismiss Plaintiffs' Complaint in its entirety. *See* Mot.; Reply ISO Mot. to Dismiss, ECF No. 60 ("Reply"). The change in venue does not affect this analysis, and does not resuscitate Plaintiffs' defective claims. There are no fundamental differences between the relevant Sherman Act case law in the Fifth Circuit (where the Motion was initially briefed) and the D.C. Circuit. This is unsurprising, as the claims are largely controlled by Supreme Court precedent, including *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284 (1985). Indeed, in the context of the parties'

motion to transfer briefing, Defendants expressly argued that "no conflict of laws issues are expected."  Mot. To Transfer, ECF No. 42-01 at 25.  Plaintiffs did not contest this argument, and the court agreed, holding that "[s]ince this is an antitrust case in which federal law applies, there are no conflicts."  *See* ECF No. 77, at 12.

In any event, controlling Supreme Court and D.C. Circuit authority supports each of Defendants' four alternative arguments for dismissal: (1) the Complaint fails to allege an unlawful agreement to restrain trade; (2) the Complaint fails to plead antitrust injury; (3) the Complaint fails to allege that the TNI unreasonably restrained trade in any properly defined relevant antitrust market; and (4) the Complaint fails to plead action by each of the four Defendants.  Mot. 6–25.

For the reasons discussed in the Motion and herein, the Complaint should be dismissed.

## PROCEDURAL HISTORY

This is the fourth court to see this case.  On January 10, 2023, a substantially similar set of plaintiffs filed this Sherman Act action in the Amarillo Division of the Northern District of Texas.  *See Child.'s Health Def. v. WP Co.*, No. 2:23-cv-0004-Z (N.D. Tex.), ECF No. 1.  On May 12, 2023, Judge Kacsmaryk granted Defendants' transfer motion and transferred the case, along with pending motions to dismiss, to the Southern District of New York.  2023 WL 3940446, at *3.

Plaintiffs voluntarily dismissed, and on May 31, 2023 refiled the case in the Monroe Division of the Western District of Louisiana.  No. 3:23-cv-720-TAD-KDM (W.D. La.), ECF No. 1.  Defendants filed (1) a new motion to transfer, ECF No. 42; and (2) a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF No. 41.  On September 18, 2023, Judge Doughty granted the transfer motion and ordered the matter, including Defendants' pending Motion to Dismiss, transferred to this Court.  ECF Nos. 77, 78.[1]

---

[1] On October 31, 2023, the Parties submitted a Joint Motion seeking a briefing schedule to provide

Concurrently with this case, several Plaintiffs and their affiliates have filed their own separate actions against various platforms, arising out of their concerns that they have had content removed or suppressed. *See* Mot. 3–5.  Two of those cases have been rejected entirely or in part since briefing on the pending Motion was completed in August.  First, Robert F. Kennedy, Jr.—Plaintiff CHD's Chairman, and Plaintiffs' counsel of record, *see* Compl. ¶ 368(C)—sued Google and YouTube alleging that YouTube could not use its medical misinformation policies to remove Kennedy's videos. *Kennedy v. Google LLC*, 2023 WL 5440787, at *5 (N.D. Cal. Aug. 23, 2023).  The court denied his request for a preliminary injunction, holding that he failed to "demonstrate urgency or that his speech [would] be censored on other social media platforms." *Id.* at *5, *9.  The court emphasized that "Kennedy has expressed that he is still able to post content on Facebook and X that runs afoul of Google's policy." *Id.* at *5.  Second, Plaintiff Dr. Mercola and his company sued Google and related defendants, alleging that Google's removal of his posts that Google considered "medical misinformation about COVID-19 and [its] vaccines," breached its terms of service. *Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, at *1 (N.D. Cal. Sept. 4, 2023).  On September 4, 2023, the court dismissed the case with prejudice, holding that "the plaintiffs did not plausibly allege a breach" and that Google's "contract bars the claims as a matter of law." *Id.* at *4, *7.

The present case is also flawed and should be dismissed.

## ARGUMENT

## I.   THE COMPLAINT FAILS TO PLEAD A CONSPIRACY TO ACHIEVE AN UNLAWFUL OBJECTIVE.

The central failure of the Complaint is the lack of any plausible allegation that Defendants

---

supplemental briefing on Defendants' pending Motion to Dismiss.  ECF No. 90.  On November 2, 2023, the Court granted the Parties' motion. *See* Nov. 2, 2023 Minute Entry.

entered into an *agreement* with the Platforms to take unlawful action against Plaintiffs.  Mot. 1–2,

7–12; Reply 2–5.  Although Plaintiffs allege that TNI members agreed to exchange unspecified

alerts to combat the spread of disinformation (and none relating to any Plaintiff), such information

sharing is insufficient to plausibly allege an agreement to achieve an unlawful purpose.

A claim under Section 1 of the Sherman Act must have "enough factual matter (taken as

true) to suggest that *an agreement was made*."  *Twombly*, 550 U.S. at 556–57 (emphasis added);

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019), *aff'd*, 816 F. App'x

497, 500 (D.C. Cir. 2020); *see* Mot. 7–12.  It must plausibly allege that the defendants "had a

conscious commitment to a common scheme designed to achieve an unlawful objective."

*Freedom Watch*, 368 F. Supp. 3d at 37 (quoting *Monsanto Co. v. Spray-Rite Serv. Corp*, 465 U.S.

752, 764 (1984)).  In addition, "[f]ollowing *Twombly*, courts dismiss Section 1 complaints when

there is an independent business justification for the observed conduct and no basis for rejecting it

as the explanation for the conduct."  *In re McCormick & Co.*, 2017 WL 11830269, at *3 (D.D.C.

June 13, 2017).  Courts in this Circuit and across the country routinely dismiss cases that fall short

of this requirement.  *See, e.g.*, *id.*; *Freedom Watch*, 368 F. Supp. 3d at 37; *Marucci Sports, L.L.C.

v. NCAA*, 751 F.3d 368, 377 (5th Cir. 2014) (citing *Twombly*, 550 U.S. at 557).

*Freedom Watch* is instructive.  That case concerned allegations in which a plaintiff internet

publisher alleged that "Platforms conspired to suppress [their] audience and revenue[]," and also

their "conservative political views."  *Freedom Watch*, 816 F. App'x at 499.  Judge McFadden

dismissed the case, emphasizing that the "Complaint presents no facts excluding the possibility

that the alleged conspirators were acting alone."  *Freedom Watch*, 368 F. Supp. 3d at 38.  The D.C.

Circuit affirmed, holding that the allegation that each platform "refused to provide certain services

to Freedom Watch" was insufficient because "parallel conduct alone cannot support a claim under

the Sherman Act." *Freedom Watch*, 816 F. App'x at 500.

So too here. The Complaint "does not set forth facts that demonstrate a 'meeting of the minds'" between the alleged group boycott members to take unlawful action against any Plaintiff. *Marucci*, 751 F.3d at 375 (quoting *Twombly*, 550 U.S. at 557). To the contrary, the "obvious alternative explanation" is that the alleged conduct reflected independent responses to violations of the Platforms' respective content moderation policies or other business imperatives. *In re McCormick & Co.*, 2017 WL 11830269, at *3, *4. The Complaint does not and cannot present sufficient facts to plausibly establish that the harms alleged by Plaintiffs were the product of anything other than independent decision-making by each Platform, pursuant to its own content moderation policies, which is insufficient. *Id.*; *see also* Mot. 10 & 4 n.2.

Indeed, since the Plaintiffs filed this lawsuit, multiple courts have recognized that the Platforms removed Plaintiffs' content pursuant to the Platforms' content moderation policies, saying nothing about the TNI or Defendants. *See, e.g.*, *Mercola.com, LLC*, 2023 WL 5680112, at *1, *6 ("Defendant YouTube terminated plaintiff Joseph Mercola's YouTube channel for violating YouTube's Community Guidelines by posting medical misinformation about COVID-19 and vaccines . . . YouTube's actions were permitted by the Terms of Service."); *Kennedy*, 2023 WL 5440787, at *4 ("Google and YouTube removed [Kennedy's] videos based on its content moderation and COVID-19 medical misinformation policy as permitted under the terms of service."). Plaintiffs cannot distinguish this "obvious alternative explanation," which is apparent from the facts pleaded in their Complaint, and in their concurrent litigation.

The alleged scheme is rendered further implausible by the fact that Plaintiffs continue to have robust access to the Platforms. Mot. 18 n.11.[2] As in *Freedom Watch*, this fact "contradicts

---

[2] Plaintiffs incorporated the status of their social media accounts into the Complaint, and the Court

assertions of a coordinated 'refusal to deal' with the Plaintiffs."  368 F. Supp. 3d at 37.

At most, Plaintiffs have alleged that TNI members occasionally shared alerts with each other (though the Complaint includes only threadbare accusations that they ever shared even a single alert regarding any Plaintiff here).  Mot. 8–9.  But it is established law that courts do not "[p]ermit[] an agreement to be inferred merely from" such conduct, as it "could deter or penalize perfectly legitimate conduct."  *Monsanto*, 465 U.S. at 763–64; *see also, e.g.*, *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1487 (D.C. Cir. 1984) ("[I]t is not enough to prove that the alleged co-conspirators merely exchanged information."); Mot. 8–9 (collecting cases).

Nor is it enough that Plaintiffs allege that Defendants are members of the TNI industry group.  Mot. 25; Reply 6 n.5.  As the D.C. Circuit has held, "evidence of overlapping membership in a case such as this is not to be treated as probative of conspiracy.  Mere membership in associations is not enough to establish participation in a conspiracy with other members of those associations."  *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 265 (D.C. Cir. 1981) (reversing damages award where there was no actionable conspiracy); *see also City of Moundridge v. Exxon Mobil Corp.*, 2009 WL 5385975, at *3, *9 (D.D.C. Sept. 30, 2009) ("[M]ere contacts and communications, or the mere opportunity to conspire[] among antitrust defendants [was] insufficient evidence of conspiracy."), *aff'd*, 409 F. App'x 362 (D.C. Cir. 2011).  Plaintiffs have alleged nothing more here.  Mot. 25; Reply 6 n.5.

Because the Complaint fails to plausibly allege an agreement to unlawfully restrain trade, the Complaint should be dismissed.  *Freedom Watch*, 816 F. App'x at 500.

---

can take judicial notice that they remain active.  *See United States v. Flynn*, 507 F. Supp. 3d 116, 126 (D.D.C. 2020) (taking judicial notice of tweet); *Brink v. Cont'l Cas. Co.*, 2021 WL 7907065, at *9 (D.D.C. Dec. 27, 2021) ("A court may take judicial notice of the contents of an Internet website, where neither party disputes the accuracy of information on the website."); Mot. 15 n.10.

## II.     THE COMPLAINT FAILS TO PLEAD SUFFICIENT INJURY.

### A.     The Complaint Fails To Plead That Plaintiffs Suffered Antitrust Injuries.

As the Motion explained, the Complaint fails to allege "an actual or threatened injury 'of the type the antitrust laws were intended to prevent' that was caused by the defendant's alleged wrongdoing."  Mot. 22–23 (quoting *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 982 (D.C. Cir. 2017)).  Defendants specifically relied on the D.C. Circuit's decision in *Johnson* in support of this argument, which Plaintiffs ignored, but which compels dismissal here.

First, while Plaintiffs include the conclusory allegation that the TNI "suppress[ed] competition in the marketplace of ideas," Compl. ¶¶ 37, 318, the D.C. Circuit has made clear that this is not a cognizable antitrust injury.   In *Johnson*, the D.C. Circuit rejected a candidate's Sherman Act claim, emphasizing that the alleged market "is no more regulated by the antitrust laws than the 'marketplace of ideas'" because "an antitrust violation must involve injury to commercial competition."  869 F.3d at 982–83.  Courts have held that limitations on access to media and donations "do[] not meet antitrust standing requirements to state a cognizable violation of the Sherman Act."  *Peden v. Democratic Nat'l Comm.*, 2020 WL 6384618, at \*2–3 (D. Mass. Oct. 30, 2020) (citing *Johnson*); *see also Freedom Watch Inc. v. Jud. Watch, Inc.*, 289 F. Supp. 3d 1270, 1275 (S.D. Fla. 2018) (citing *Johnson*); *DataCell Ehf v. Visa, Inc.*, 2015 WL 4624714, at \*7 (E.D. Va. July 30, 2015).  Similarly, here, the Complaint does not plead any injury to commercial competition.  *See* Mot. 22–23; Reply 7.

Second, to the extent the Complaint alleges injuries that could arguably be cognizable economic harm, the Complaint does not plausibly assert that these injuries were caused by the alleged efforts of Defendants, as opposed to the Platforms themselves.  *Cf. Freedom Watch*, 816 F. App'x at 499 (finding plaintiffs had standing to assert claims against a number of social media *platforms* where plaintiffs alleged injuries directly flowed from the *platforms'* conduct).

"Antitrust standing requires a plaintiff to show an actual or threatened injury of the type the antitrust laws were intended to prevent *that was caused by the defendant's alleged wrongdoing.*" *Johnson*, 869 F.3d at 982 (emphasis added); *see In re McCormick*, 2017 WL 11830269, at *6 (dismissing case where plaintiffs failed to plausibly allege that harm was "caused by the agreements on fill levels").  Here, the Complaint fails to plausibly allege that Defendants caused Plaintiffs any harm whatsoever.  Mot. 23; Reply 7.  There is no concrete factual allegation in the Complaint that Defendants or the TNI ever took any action against Plaintiffs.  Plaintiffs failed to respond to Defendants' arguments and have waived the issue.  Reply 7.

### B.   The Complaint Fails To Plead Injury to Competition.

The Complaint should also be dismissed because it does not plead injury to competition, but instead alleges only injuries to Plaintiffs.  Mot. 24; Reply 7–8.  Just like in the Fifth Circuit, D.C. Circuit authority requires Plaintiffs to plead that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market."  *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005); *see also Gross v. Wright*, 185 F. Supp. 3d 39, 53 (D.D.C. 2016).  Plaintiffs' allegations that the "boycott has dissuaded numerous other online news publishers from engaging in Prohibited Reporting," Compl. ¶ 311, or resulted in "other boycott victims," Compl. ¶ 542, are exactly the kinds of conclusory allegations that courts refuse to accept.  *See, e.g.*, *Asa Accugrade, Inc.*, 370 F. Supp. 2d at 215–16 (allegations that "Defendants' [antitrust] violations . . . have and continue to harm competition" insufficient); Mot. 22–24; Reply 7–8.  "A plaintiff cannot federalize its private economic injuries 'merely by dressing them up in the language of antitrust.'"  *Gross*, 185 F. Supp. 3d at 49.

## III.   THE COMPLAINT FAILS TO PLEAD A RESTRAINT OF TRADE.

The Complaint fails to plead that the alleged agreement "either did or was intended to unreasonably restrict trade in the relevant market."  *Asa Accugrade, Inc.*, 370 F. Supp. 2d at 215.

"Whether the alleged restraint on trade is unreasonable is determined under either a rule-of-reason or a per se test." *Id.* "The rule-of-reason test . . . is presumptively favored" and "the Supreme Court has cautioned against the precipitate application of the *per se* doctrine." *Id.* Defendants' prior briefing makes clear that the Complaint fails to plead a plausible claim under either test. Mot. 13–20; Reply 8–10. Applying cases from this Circuit leads to the same result.

### A.    The Complaint Fails To Plead the Elements of a *Per Se* Group Boycott.

Defendants' application of the factors from *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284 (1985) amply demonstrates the deficiency of Plaintiffs' *per se* claim. Mot. 13–20. In *Northwest Wholesale Stationers*, the Court observed that, while courts must analyze the vast majority of purported "group boycotts" under the rule of reason, a small minority of "group boycott" cases could qualify for *per se* treatment to the extent the purported boycott: (1) involved boycotting firms that "possess[] a dominant position in the relevant market"; (2) "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete"; and (3) involved "practices [that] were generally not justified by plausible arguments that they were intended to enhance overall efficiency and make markets more competitive." *Nw. Wholesale Stationers*, 472 U.S. at 294 (citation omitted). The D.C. Circuit has acknowledged *Northwest Wholesale Stationers* as controlling law when analyzing *per se* claims. *See, e.g.*, *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) (*per se* framework is to be applied "only if the plaintiff makes a threshold showing that the group possesses market power or exclusive access to an element essential to effective competition").

"The Supreme Court labels categories of restraints as illegal *per se* when they would always or almost always tend to restrict competition, and therefore, it is not worthwhile to analyze the effects in a particular instance." *In re McCormick*, 2017 WL 11830269, at *3. That is not the case here. As the D.C. Circuit has acknowledged, "[t]o outlaw all activity which might be labelled

9

a group boycott is dangerous in that it might discourage certain reasonable concerted activity." *Kreuzer*, 735 F.2d at 1492.  Indeed, "it has always been clear that boycotts are not, and cannot ever be, *per se* illegal." *Rothery*, 792 F.2d at 215; *see also Asa Accugrade, Inc.*, 370 F. Supp. 2d at 217.

### 1.    The Complaint Fails To Allege TNI Members Have a Dominant Position in a Defined, Relevant Market.

"For a Sherman Act § 1 claim to survive a motion to dismiss, the proposed market definition must be plausible" and "must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes." *Gross*, 185 F. Supp. 3d at 49.  Indeed, "it is difficult or impossible to determine the plausibility of an antitrust claim if the relevant market is untenably defined." *Id.* (citation omitted).  And even where a relevant market is described, it must be one in which Defendants have dominant market power, because "the per se approach has generally been limited to cases in which firms with market power [at the same level of distribution] boycott suppliers or customers in order to discourage them from doing business with a competitor." *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986); *see also Rothery*, 792 F.2d at 217 n.3 (finding no *per se* claim where "Atlas is by no means a dominant force in the market").  Here, Plaintiffs fail to allege that Defendants have a dominant position in a defined relevant market.  Mot. 14–17.

First, Plaintiffs' Complaint fails to allege a plausible relevant market.  Mot. 14.  Plaintiffs attempt to define the "relevant market" as the "US online news market," which consists of submarkets for "online COVID news" and "online political news."  Compl. ¶¶ 136, 188, 190.  The Complaint's description of the alleged market is overbroad (if not limitless), featuring content published by virtually anyone with Internet access through a multitude of platforms.  *See* Mot. 14 (citing Compl. ¶¶ 137–77, 206).  Just like in *Gross*, "Plaintiffs' proposed market definitions are simply too broad to plausibly describe a single market."  185 F. Supp. 3d at 51.  The "US online news market" "for instance, includes an almost unlimited range of activities related to [online

content] in all its various forms . . . Such indiscriminate monikers are unhelpful in delineating a meaningful product market for federal antitrust purposes." *Id.* And "[a]t the other end of the spectrum, a . . . market limited to [online COVID news], would be 'unreasonably and implausibly narrow.'" *Id.* Failure to define the market by reference to the reasonable interchangeability of services is "a valid ground for dismissal at the Rule 12(b)(6) stage." *Id.*

Second, even if Plaintiffs could successfully define a relevant market, they fail to plausibly allege Defendants maintain a dominant position in that market. *FTC*, 476 U.S. at 458; Mot. 15–17; Reply 9. Plaintiffs do not even attempt to quantify Defendants' market power, which independently necessitates dismissal. *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 19–20 (D.D.C. 2021) (granting motion to dismiss where plaintiff failed to specifically allege defendant's market share, thereby failing to "nudge[] [its market power] claims across the line from conceivable to plausible") (citing *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)). In any event, Defendants' market power is not dominant. *See, e.g.*, *Rothery*, 792 F.2d at 229 (six percent market share not enough to warrant *per se* treatment). Rather, Plaintiffs' own Complaint illustrates that it is implausible for Defendants to maintain any kind of dominance in the broad market for online news, which the Complaint admits is "explod[ing]" with "thousands of new, rival sources of news." Mot. 15 (citing Compl. ¶¶ 18, 163). The Complaint relies heavily on allegations specific to "TNI's Big Tech Members," but those allegations (1) speak to market power in *other* unrelated markets (such as the online search market), and (2) are supported by authorities that in fact illustrate that several dominant players in the market are *not* TNI members, including, for example, news aggregators, all major news networks, and other platforms. Mot. 15–17.

2. **The Complaint Fails To Allege Any TNI Members Cut Off Access to Any Facility Necessary To Compete.**

The Complaint similarly fails to allege facts that satisfy the second *per se* factor, i.e., that the alleged boycott "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete." *Nw. Wholesale Stationers*, 472 U.S. at 294; Mot. 17–19; Reply 9–10; *see also Rothery*, 792 F.2d at 216, 229 (applying second *Nw. Wholesale Stationers* factor).

In fact, Plaintiffs' Complaint illustrates that they still have access to the alleged online news market as they are still generally able to publish their content on their own websites, on other "dominant" platforms outside the TNI, and even on alleged TNI Platforms, such as YouTube and X (formerly Twitter). *See* Mot. 17–18 (citing Compl. ¶¶ 39, 57, 64, 76, 87, 96, 112) (describing Plaintiffs' own websites where they post content). As the court in *Kennedy, Jr.* acknowledged, CHD Chairman "Kennedy . . . is still able to post content on Facebook and X that runs afoul of Google's policy. There are numerous other ways that Plaintiff may share video content concerning his viewpoints on vaccinations and COVID-19." 2023 WL 5440787, at *5. Indeed, far from having no access, Plaintiffs continue to publicize this very lawsuit on the very TNI Platforms they implausibly claim are boycotting them. *See, e.g.*, @ChildrensHD, Twitter (Oct. 19, 2023) https://twitter.com/ChildrensHD/status/1715014117113680013 ("Learn about our lawsuit against the Trusted News Initiative"); *see supra* note 2 (the Court may take judicial notice of tweets).

As Plaintiffs maintain substantial access to publish online news, they cannot plausibly establish that the alleged boycott "cut off access . . . necessary . . . to compete[.]" *Nw. Wholesale Stationers*, 472 U.S. at 294; *see also, e.g.*, *Freedom Watch*, 368 F. Supp. 3d at 37.

3. **The Complaint Fails To Allege Facts Demonstrating That the TNI Lacked Any Plausible Procompetitive Justifications.**

Plaintiffs' Complaint also fails to allege facts that satisfy the third *per se* factor, that the TNI lacks any plausible procompetitive justifications. Mot. 19–20; Reply 10. Plaintiffs must

sufficiently allege "practices [that] were generally not justified by plausible arguments that they were intended to enhance overall efficiency and make markets more competitive." *Nw. Wholesale Stationers*, 472 U.S. at 294.  They fail to do so.

Courts in this Circuit are wary of *per se* treatment where there are apparent procompetitive benefits to an alleged restraint.  "To escape *per se* condemnation, it is necessary only to determine that there exists a potential 'redeeming virtue' to the challenged agreement, not that one definitely exists." *Vetzel Moving & Storage, Inc. v. Atlas Van Lines, Inc.*, 1986 WL 967, at *7 (D.D.C. June 20, 1986).  Thus, for example, the D.C. Circuit declined to consider an alleged boycott as a *per se* restraint where the plaintiff could not show that the alleged policy at issue was "without 'any redeeming virtue.'"  *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1181 (D.C. Cir. 1978).

Here, the information sharing the TNI is alleged to have engaged in is procompetitive because it enables the Platforms to determine whether content runs afoul of their policies, and if so, decide whether to take action in response to a violation.  Congress itself has acknowledged the usefulness of "encourag[ing] . . . content moderation."  Mot. 19 (citing *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1031 (N.D. Cal. 2021) ("[Section] 230's . . . 'Good Samaritan' [provision was designed] to encourage and immunize content moderation.")).  Here, at most, the Complaint alleges Defendants agreed to alert the Platforms to content that may violate the Platforms' own policies.  This is entirely consistent with Congress' design to protect a "vibrant and competitive free market" on the Internet.  *See* 47 U.S.C. § 230(b)(2); *Kennedy*, 2023 WL 5440787, at *6 (finding "it would not serve the public interest to let medical misinformation proliferate on YouTube").  These plausible procompetitive justifications—which Plaintiffs have failed to rebut—illustrate the Complaint's failure to satisfy the third *per se* factor.  Mot. 19–20; Reply 10.

13

**B.     The Complaint Fails To Plead a Rule of Reason Violation.**

Because Defendants' conduct is not "manifestly anticompetitive," *per se* analysis is inappropriate. *Asa Accugrade, Inc.*, 370 F. Supp. 2d at 217.  Instead, the rule of reason analysis applies, under which Plaintiffs' Complaint similarly fails to plead a claim. *Gross*, 185 F. Supp. 3d at 52.  "[A]nalysis under the rule of reason requires a plaintiff to define a relevant market, show that the defendants have market power in that market, and demonstrate that the restraint is likely to have anticompetitive effects." *In re McCormick & Co*, 217 F. Supp. 3d 124, 137 (D.D.C. 2016) (granting motion to dismiss).  In particular, "[b]ecause anticompetitive effect is an essential element of a claim under the rule of reason, plaintiffs must plausibly allege it in their complaint." *Id.* (citing cases including *Twombly*, 550 U.S. at 555 and *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 419–20 (5th Cir. 2010)).  As explained in the Motion, the Complaint fails the rule of reason test in multiple respects.  Mot. 20–21.

First, for the reasons discussed *supra*, the Complaint fails to plausibly "define a relevant market, [or] show that the defendants have market power in that market," which is fatal under the rule of reason analysis. *In re McCormick & Co.*, 217 F. Supp. 3d at 137.

Second, the Complaint fails to plausibly allege anticompetitive effects from the supposed boycott.  As the Motion explained, Plaintiffs limit their allegations of anticompetitive effect to themselves, failing to plausibly allege that any of their proposed relevant markets, including the "online news market," *as a whole* suffered any harm.  Mot. 20–21.  But "the case law is clear . . . that an absence of factual allegations tending to show that the market as a whole has suffered an anti-competitive injury is fatal to Sherman Act claims."  *Gross*, 185 F. Supp. 3d at 53 (granting motion to dismiss) (cleaned up); *see also id.* at 49 ("[T]he antitrust laws were enacted for the protection of *competition, not competitors*.") (emphasis added).   Here, as in *Gross*, "Plaintiffs offer no allegations regarding their or Defendants' respective market shares," or the extent to

14

which the alleged boycott "would enable Defendants to initiate *marketwide* price increases" or other economic harm.  *Id.* (emphasis added); *see also Asa Accugrade, Inc.*, 370 F. Supp. 2d at 218 (finding plaintiff's 8% market share insufficient to establish harm to competition); Mot. 20–21. Further, their allegation that the market is "explod[ing]" with new entrants undermines their claim of anticompetitive impact.  Compl. ¶ 163.  Finally, to the extent the Complaint alleges harm to "quality" or "consumer welfare," those allegations are conclusory and non-actionable for the reasons articulated in the Motion.  Mot. 20–21; *see In re McCormick & Co.*, 217 F. Supp. 3d at 137 (rejecting "[c]onclusory allegations of supracompetitive prices").

## IV.   THE COMPLAINT FAILS TO PLEAD CONDUCT BY EACH DEFENDANT.

Lastly, Plaintiffs' Complaint should also be dismissed because it fails to allege that each individual defendant engaged in any unlawful conduct.  Mot. 24–25; Reply 5–6.  Courts in this Circuit reject claims where plaintiffs fail to plausibly allege actionable conduct by *each defendant*. *See, e.g., Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 164 (D.D.C. 2004) (granting motion to dismiss where plaintiff failed to plausibly allege each defendant joined the conspiracy and played some role in it).  Plaintiffs' Complaint contains hundreds of paragraphs of allegations, but alleges no unlawful conduct by any of the individual named Defendants.  *See* Mot. 25 (citing Compl. ¶¶ 367–481).  Just like in *Jung*, "[P]laintiffs' allegations with respect to [Defendants] are vague, conclusory and simply insufficient to meet plaintiffs' burden under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  300 F. Supp. 2d at 164.  Such "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."  *Total Benefits*, 552 F.3d at 436 (citing *Twombly*, 550 U.S. at 565 n.10).

## CONCLUSION

For all these reasons, the Court should grant the motion and dismiss Plaintiffs' Complaint.

Dated: November 22, 2023

/s/ Leslie E. John
Leslie E. John (*pro hac vice*)
Elizabeth P. Weissert (*pro hac vice*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999
johnl@ballardspahr.com
weisserte@ballardspahr.com

Jay Ward Brown (#1020910)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, DC 20006
Tel: (202) 661-2200; Fax: (202) 661-2299
brownjay@ballardspahr.com

*Attorneys for The Associated Press*

/s/ Jeffrey C. Bank
Jeffrey C. Bank (#1697743)
Allison B. Smith (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, DC 20006
Tel: (202) 973-8800; Fax: (202) 973-8899
jbank@wsgr.com
allison.smith@wsgr.com

*Attorneys for Reuters News & Media Inc.*

Respectfully submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (#441261)
Thomas G. Hentoff (#438394)
Nicholas G. Gamse (#1018297)
Kathryn E. Garza (application forthcoming)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 434-5000; Fax: (202) 434-5029
jschmidtlein@wc.com
thentoff@wc.com
ngamse@wc.com
kgarza@wc.com

*Attorneys for WP Company LLC*
*d/b/a The Washington Post*

/s/ Edward B. Schwartz
Edward B. Schwartz (#429690)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000, East Tower
Washington, DC, 20005
Tel: (202) 414-9200
eschwartz@reedsmith.com

Michelle A. Mantine (*pro hac vice*)
Reed Smith LLP
Reed Smith Centre, 225 Fifth Avenue
Pittsburgh, PA, 15222
Tel: (412) 288-3131
mmantine@reedsmith.com

Casey J. Olbrantz (*pro hac vice*)
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
colbrantz@reedsmith.com

*Attorneys for The British*
*Broadcasting Corporation*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Counsel hereby certifies that on the 22nd day of November 2023, notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.

*/s/ John E. Schmidtlein*
John E. Schmidtlein