## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Children's Health Defense *et al.*, | ) |
| | ) |
| *Plaintiffs,* | ) |
| v. | ) |
| | ) Civil Action No. 23-cv-2735 (TJK) |
| WP Company LLC *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

## DEFENDANTS' RESPONSE TO THE
## STATEMENT OF INTEREST OF THE UNITED STATES

**TABLE OF CONTENTS**

I. The Statement of Interest is Untimely. ...........................................................................1

II. The Government Does Not Argue That the Complaint Plausibly Alleges an Agreement to Restrain Trade. ........................................................................................2

III. The Government Does Not Address the Lack of Plausible Allegations Against Each Defendant. ..............................................................................................................5

IV. The Government Does Not Argue that Defendants' Conduct Caused Plaintiffs to Sustain an Antitrust Injury. .............................................................................................5

V. The Government Does Not Argue That the Complaint Sufficiently Pleads a Rule of Reason Violation. ........................................................................................................8

VI. Conclusion. ...................................................................................................................10

# TABLE OF AUTHORITIES

*Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81 (D.D.C. 2010) ............................................ 5

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213 (D.D.C. 2005) ..................... 6

*Assoc. of Am. Phys. v. Am. Bd. of Internal Medicine*, 2025 WL 2249980 (S.D. Tex. Jul. 31, 2025) ......................................................................................................................... 7

*Associated Press v. United States*, 326 U.S. 1 (1945) ............................................................. 9, 10

*\*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 3

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986) .................................................... 6

*Fair Hous. Center of Central Indiana, Inc. v. Rainbow Realty Grp., Inc.*, 2022 WL 6158365 (S.D. Ind. Oct. 7, 2022) ......................................................................................... 1

*\*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019) ................................. 3, 4

*FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) ................................................................. 9

*\*Gross v. Wright*, 185 F. Supp. 3d 39 (D.D.C. 2016) ..................................................................... 6

*\*In re McCormick*, 2017 WL 11830269 (D.D.C. June 13, 2017) .................................................. 6

*\*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) ......................... 5, 7

*Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004) .......................................... 5

*Kreuzer v. Am. Acad. Of Periodontology*, 735 F.2d 1479 (D.C. Cir. 1984) .................................. 4

*LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695 (D. Minn. 2018) ................... 1, 2

*\*Marucci Sports, LLC v. NCAA*, 751 F.3d 368 (5th Cir. 2014) .................................................. 4, 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ...................................................... 4

*N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) .................................................................... 9

*Peden v. Democratic National Comm.*, 2020 WL 6384618 (D. Mass. Oct. 30, 2020) .................. 7

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) .................................................................................................................... 5

*U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920 (S.D. Tex. 2007) ................. 2

Eighteen months after the parties fully briefed Defendants' Motion to Dismiss (the "Motion") following the transfer to this Court, the Department of Justice (the "Government") filed a Statement of Interest, arguing that the antitrust laws protect "viewpoint competition in news markets." Statement of Interest ("SOI") 2. As a threshold matter, the Court can set aside the untimely Statement. But even if the Court chooses to consider the Statement, it does not address the multiple independently dispositive reasons why Plaintiffs fail to state a claim. The Statement therefore provides no basis for denial of Defendants' Motion. The Statement expressly does not take a "position on the application of the law to the facts alleged in Plaintiffs' complaint or on the resolution of Defendants' motion." SOI 2. Nor does the Statement address the binding in-Circuit precedent cited in Defendants' briefing; indeed, the Statement cites just a single D.C. Circuit case. And the Statement does not cite a single post-*Twombly* case in which a motion to dismiss was denied. The Statement therefore merely describes the new administration's "enforcement priorities" that are not relevant to the Motion at issue here, and it does not save Plaintiffs' claim. Dkt. 122, at 3.

I.    **The Statement of Interest is Untimely.**

The Court would be well within its discretion to reject the Statement because it is untimely. Briefing on Defendants' Motion was completed exactly 18 months before the Government filed its Statement. Courts have rejected as untimely similar statements of interest filed much closer in time to the parties' briefing of dispositive motions. *See, e.g.*, *LSP Transmission Holdings, LLC v. Lange*, 329 F. Supp. 3d 695, 703–04 (D. Minn. 2018) (declining to consider statement of interest "[i]n light of the Antitrust Division's unjustified delay" where it filed statement "roughly two and one-half months after briefing was completed" on pending motion to dismiss), *aff'd sub nom. LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018 (8th Cir. 2020); *Fair Hous. Center of Central Indiana, Inc. v. Rainbow Realty Grp., Inc.*, 2022 WL 6158365, at *4 (S.D. Ind. Oct. 7,

2022) (declining to consider statement of interest where filed four months after briefing concluded); *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 928 (S.D. Tex. 2007) (striking Government Statement of Interest as "untimely filed" "more than seven days after . . . motion for summary judgment was filed, and the United States did not seek leave of court to file it"), *aff'd sub nom. U.S. ex rel. Gudur v. Deloitte & Touche*, 2008 WL 3244000 (5th Cir. Aug. 7, 2008).

Here, the Government does not explain the untimeliness of its filing, apart from citing a political appointee's description of new enforcement priorities in an April 2025 speech, three months before the Government filed its Statement. SOI 1, 7–8. And the administration was surely aware of the case long before it filed the Statement, as Secretary of Health and Human Services Robert F. Kennedy, Jr. was initially a named plaintiff and later counsel of record for the Plaintiffs until he withdrew upon his nomination in January 2025.[1] *See* Compl. ¶¶ 98, 368. Defendants recognize the Court's discretion to consider the Statement but respectfully submit that the Government's unjustified delay undercuts its purported interest in this case. In any event, the Statement does not affect the merits of Defendants' Motion, which should be granted. *See, e.g.*, *LSP Transmission Holdings*, 329 F. Supp. 3d at 703 (declining to consider Statement of Interest but emphasizing that "consideration of the statement would not alter the Court's decision" that the complaint failed to state a claim).

## II. The Government Does Not Argue That the Complaint Plausibly Alleges an Agreement to Restrain Trade.

The Statement does not respond to Defendants' central argument in favor of dismissal: the Complaint fails to plausibly allege, as it must to survive a motion to dismiss, that Defendants

---

[1] The Statement does not acknowledge any of that or that Kennedy was also Chairman and Chief Legal Counsel of plaintiff Children's Health Defense.

2

together reached an agreement with the Platforms to achieve an unlawful purpose. *See* Mot. 7-12; Supp. Mot. 3–6. Instead, the Complaint merely pleads facts consistent only with non-Defendant Internet Platforms, including Facebook, Google, and Twitter, taking independent actions. *See id.*

Here, the Government outlines a framework that could apply in a case with allegations on more solid footing than those put forth by Plaintiffs, but it takes no position on the essential question of whether *these* Plaintiffs have met their burden. SOI 8–10. While the Government explains that "it is critical to probe plaintiffs' allegations to determine *whether they contain plausible allegations of an agreement among competitors*," SOI 13 (emphasis added), it does no such probing. And that assertion is little more than a restatement of the rule from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which is at the heart of Defendants' motion. *See, e.g.*, Mot. 6–8. At most, Plaintiffs allege that the Platforms—not Defendants—removed Plaintiffs' content pursuant to the Platforms' own content moderation policies. *See* Mot. 7–12; Supp. Mot. 5. Yet, Plaintiffs have failed to identify a single instance in which any Defendant identified or shared any Plaintiff's content for or with any other member of the Trusted News Initiative ("TNI"), much less that Defendants agreed to ask the Platforms to limit access to Plaintiffs' content, or that the Platforms ever agreed to do so. *See* Mot. 5–6. On top of that, and in any event, Plaintiffs continue to generally have access to the Platforms. *See* Mot. 12; Supp. Mot. 5. The Government does not address any of this.

The closest the Government comes to opining on the conclusory conspiracy allegations here is to ruminate that "when rival news publishers come together and conduct aspects of their news businesses jointly, that is concerted action subject to Section 1 scrutiny." SOI 10. But for a Complaint to pass muster, it must allege facts that establish a "conscious commitment to a common scheme designed to achieve *an unlawful objective*." *Freedom Watch, Inc. v. Google, Inc.*, 368 F.

3

Supp. 3d 30, 37 (D.D.C. 2019) (emphasis added), *aff'd,* 816 F. App'x 497 (D.C. Cir. 2020). In *Freedom Watch*—a case that presented circumstances analogous to the ones here—the plausible factual allegations in the Complaint did not exclude the possibility of parallel conduct as opposed to joint action, so the Court dismissed the case. *See id.*; Supp. Mot. 4–5. The Government Statement does not address that decision, and more generally, says nothing about the "pivotal question," that is, "whether the concerted action was a result of an agreement . . . to *unreasonably restrain trade.*" *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014) (emphasis added).

As for the Government's contention that "Defendants accept some version of concerted activity," SOI 10, that misinterprets Defendants' argument. Information sharing is not inherently anticompetitive, nor does it suffice to plead concerted action. *See, e.g.*, *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762-63 (1984) (explaining "the fact that a manufacturer and its distributors are in constant communication about prices and marketing strategy does not alone show that the distributors are not making independent pricing decisions"); *Kreuzer v. Am. Acad. Of Periodontology*, 735 F.2d 1479, 1487 (D.C. Cir. 1984) ("[I]t is not enough to prove that the alleged co-conspirators merely exchanged information."). Thus, even if TNI members agreed to *notify* each other of content they considered to be disinformation, that does not support a plausible inference that the Defendants agreed to take unlawful action directed at Plaintiffs and to the detriment of competition in a relevant market. Supp. Mot. 3–5; 13. In short, the generalized information sharing that the Complaint alleges cannot by itself state a claim, and the Government's Statement does not change that.

### III. The Government Does Not Address the Lack of Plausible Allegations Against Each Defendant.

The Government also does not contest that courts in this Circuit and across the country reject antitrust claims where plaintiffs fail to plausibly allege actionable conduct by each defendant. The Complaint's failure to articulate how each of the "Defendants specifically, as opposed to all the named defendants generally" participated in the supposed conspiracy is "[f]atal." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010); *see also Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 164 (D.D.C. 2004). The Government's Statement does not (and could not) explain away that failure.

### IV. The Government Does Not Argue that Defendants' Conduct Caused Plaintiffs to Sustain an Antitrust Injury.

The Government advances the novel view that the antitrust laws theoretically protect "viewpoint competition in news markets," and criticizes Defendants for arguing that Plaintiffs have not identified a cognizable antitrust injury. SOI 2. Regardless of whether "viewpoint competition" is cognizable under the antitrust laws, the Government is wrong that Plaintiffs have pled antitrust injury here.

First, nowhere does the Government address Plaintiffs' failure to allege that Defendants' conduct *caused* any injury to Plaintiffs. "[A]ntitrust standing requires a plaintiff to show an actual or threatened injury of the type the antitrust laws were intended to prevent *that was caused by the defendant's alleged wrongdoing*." *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 982 (D.C. Cir. 2017) (emphasis added). The Complaint not only identifies no cognizable antitrust injury but also does not plausibly allege that Defendants *caused* any injury. *See* Supp. Reply 2-3. The Government tries to distinguish *Johnson* on the facts as pertaining to a "political candidate[]," SOI 7, but that misses the forest for the trees; the Government does not and cannot dispute that

5

*Johnson*'s requirement that a plaintiff must plausibly allege *causation* is controlling here.  Indeed, the Government ignores the non-political cases from this Circuit and elsewhere which likewise emphasize this requirement. *See, e.g.*, *In re McCormick*, 2017 WL 11830269, at *3–*6 (D.D.C. June 13, 2017).

Second, the Complaint also fails to plead that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market." *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005); Mot. 24.  The Government agrees an antitrust injury can arise only from "a competition-*reducing* aspect or effect of the defendant's behavior." SOI 6 (internal quotations omitted).  But the Government never explains how the ill-defined injury to Plaintiffs alone constitutes market-wide harm to competition.  According to the Government, Plaintiffs have alleged a reduction in *Plaintiffs'* revenue, *see id.*, but that is not sufficient to allege antitrust injury unless the reduction results from conduct otherwise harmful to competition.  *See, e.g.*, *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 115-17 (1986).  "[A]ntitrust laws are designed to protect competition," not individual competitors. *Marucci Sports*, 751 F.3d at 376; *Gross v. Wright*, 185 F. Supp. 3d 39, 49 (D.D.C. 2016) (similar).

As to the claim that consumers "were allegedly deprived of the benefits to content competition," *id.*, the Government ignores entirely the Complaint's allegation that there has been "an explosion of new entrants into the news market."  Compl. ¶ 163.  And the Government does not point to any factual allegations establishing that consumers have been denied access to any content that is unique to Plaintiffs, especially given that Plaintiffs continue to generally have access to the Platforms.   In short, the Statement does nothing to resuscitate the Complaint's failure to allege harm to competition in a cognizable relevant market.

6

As to the Government's argument that Plaintiffs' alleged injury "related to the marketplace of ideas" could be a cognizable antitrust injury, SOI 7, the Government claims that *Johnson* and *Peden v. Democratic National Comm.*, 2020 WL 6384618 (D. Mass. Oct. 30, 2020), are inapplicable here. But the Government's arguments are unpersuasive for two reasons. First, these cases stand for broader principles having nothing to do with politics that are dispositive here: "[A]n antitrust violation must involve injury to commercial competition," *Johnson*, 869 F.3d at 983, and "individual competitor injuries . . . do not rise to injury to competition under the Sherman Act," *Peden*, 2020 WL 6384618, at *3. And second, the balance of non-political caselaw makes clear Plaintiffs have not identified a cognizable antitrust injury. *See, e.g.*, Mot. 22–23 (citing *Dedication & Everlasting Love to Animals v. Humane Soc'y of the U.S., Inc.*, 50 F.3d 710, 712 (9th Cir. 1995); *DataCell ehf. v. Visa, Inc*, 2015 WL 4624714, at *9 (E.D. Va. July 30, 2015)); *see also, e.g.*, *Assoc. of Am. Phys. v. Am. Bd. of Internal Medicine*, 2025 WL 2249980, at *5 (S.D. Tex. Jul. 31, 2025) (holding alleged "misuse of monopoly power to censor speech about matters of public policy" was "not a recognized antitrust injury").

Even assuming the Government is correct that the primary injury Plaintiffs allege (the exclusion of their viewpoints from the Platforms) *could* constitute antitrust injury[2], adopting the Government's position would not require the Court to deny Defendants' Motion. Rather, the Complaint lacks any allegation that Defendants conspired to take any action against Plaintiffs or that Defendants' actions injured competition in a properly defined antitrust relevant market.

---

[2] To be clear, although Defendants do not contest that the media market is not exempt from antitrust scrutiny, here, Plaintiffs' alleged harm is non-commercial and/or conclusory and therefore non-actionable as a matter of law. *See* Mot. 22–23; Supp. Mot. 7–8.

7

## V. The Government Does Not Argue That the Complaint Sufficiently Pleads a Rule of Reason Violation.

As Defendants argued in their Motion to Dismiss, Plaintiffs' claim fails both under the *per se* standard and rule of reason. The Government's Statement does not change that conclusion. To begin with, the Statement "focuses on the rule-of-reason claim," and says nothing substantive about whether Plaintiffs have stated a *per se* claim. SOI 10, n.5. The Statement therefore does not bear on the Court's treatment of Defendants' argument that the Complaint fails to plead the elements of a *per se* group boycott. *See, e.g.*, Supp. Mot. 9–13.

With respect to the Statement's discussion of the rule of reason inquiry, *see* SOI 1115, the Government emphasizes that its arguments only apply if the claim is otherwise sufficiently well-pleaded, *see* SOI 15. The Complaint fails to plead a rule of reason violation because it does not plausibly plead concerted activity, adequately define a cognizable relevant market, or otherwise plead facts establishing that Defendants have market power in such a market and thus does not sufficiently allege anticompetitive effects. *See* Supp. Mot. 14–15. With respect to the relevant market, the Government says nothing about Defendants' supposed market power in any cognizable relevant market. With respect to anticompetitive effects, the Government agrees with Defendants that "voluntary product standards promulgated with 'meaningful safeguards' can sometimes have 'significant procompetitive advantages.'" SOI 13 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 (1988)). And here, Plaintiffs have failed to "adequately plead[]" anticompetitive effects in any relevant market. SOI 15; *see* Supp. Mot. 14–15.

Next, the Government notes that "Plaintiffs have suggested that Defendants conspired to limit or fix the features included in the products that they sell," SOI 11, and suggests that courts should be skeptical of such agreements. But the Government's reference to these issues has no salience here. After all, to the extent there is a concern with "product features," it is the *Platforms'*

8

features; Plaintiffs concede that the Platforms have their own independent policies to address content the Platforms find objectionable. *See, e.g.*, Compl. ¶¶ 275, 323-24, 329. But the Platforms are not defendants here. And Plaintiffs have *not* plausibly alleged that Defendants conspired with the Platforms to limit access to Plaintiffs' content.

The Government relies on *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) to support its arguments about fixing product features. SOI 11–12. That case is not applicable, particularly on this Motion. There, viewing the submission of diagnostic and treatment decisions to insurance as a threat to dentists' independence and income, a dentist trade organization promulgated an express "'work rule' forbidding its members to submit x rays to dental insurers in conjunction with claim forms," and there were "factual findings" that members of the organization "conspired among themselves to withhold x rays requested by dental insurers for use in evaluating claims for benefits." *Id*. at 451, 455. Whether or not those factual circumstances constituted an "an obviously anticompetitive restraint," as the Government says, they are a far cry from Plaintiffs' failure to adequately allege facts supporting an actual group boycott as in *Dentists*.

The Government also relies heavily on *Associated Press v. United States*, 326 U.S. 1 (1945). SOI 12. In doing so, the Government ignores all of Defendant's prior arguments regarding the inapplicability of the case here. *Associated Press* held that the First Amendment did not immunize Sherman Act violations. *See* Mot. Reply 6. But Defendants have not invoked a First Amendment defense in this Motion. Even if *Associated Press* "indicate[s] that courts may impute the existence of an agreement between participants when the agreement on its face is designed to preclude all competition or competitors . . . [t]hat is not the case here." *N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 461 n.28 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018); Mot. Reply 8, n.8.

9

Further, as the Government explains, in *Associated Press*, the Associated Press "set up a system of By-Laws which prohibited all AP members from selling news to non-members, and which granted each member powers to block its non-member competitors from membership." *Id*. at 4. Not only that, but all members consented "to be bound" by the By-Laws and "severe disciplinary action" could be taken in the event of a violation. *Id*. at 8. Here, the Complaint does not allege that the Defendants or the Platforms agreed to be "bound" in any way; they were, at most, simply sharing information and independently deciding what to do with it.

The Government implies the *Associated Press* case is relevant here because the Court held "restrictive rules of a news organization to be unlawful." SOI 12. But in that case, defendants did not contest the issue of concerted action and the Court was primarily concerned with "effects on the publication of competitive newspapers" not with any purported viewpoint suppression. *Associated Press*, 326 U.S. at 13. The Court specifically emphasized that the trade association restraints were "aimed at the destruction of competition" and erected a barrier to new papers. *Id*. at 13–14. Plaintiffs, in contrast, have not adequately pled marketwise harm to competition and themselves allege that the online news market is "explod[ing] [with] new entrants." Compl. ¶ 163.

**VI.   Conclusion.**

The Government's Statement does not respond to most of Defendants' arguments in favor of dismissal. The Statement therefore is irrelevant to the task before the Court, deciding Defendants' Motion to Dismiss. For the reasons set forth in Defendants' prior briefing on the subject and in this Response, the Court should grant Defendants' Motion.

Dated: August 13, 2025

/s/ Marcel S. Pratt
Marcel S. Pratt (*pro hac vice*)
Elizabeth P. Weissert (*pro hac vice*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500; Fax: (215) 864-8999
johnl@ballardspahr.com
weisserte@ballardspahr.com

Jay Ward Brown (#1020910)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, DC 20006
Tel: (202) 661-2200; Fax: (202) 661-2299
brownjay@ballardspahr.com

*Attorneys for The Associated Press*

/s/ Jeffrey C. Bank
Jeffrey C. Bank (#1697743)
Wilson Sonsini Goodrich & Rosati
1700 K Street, N.W., 5th Floor
Washington, DC 20006
Tel: (202) 973-8800; Fax: (202) 973-8899
jbank@wsgr.com
aconteh@wsgr.com

*Attorneys for Reuters News & Media Inc.*

Respectfully submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (#441261)
Thomas G. Hentoff (#438394)
Nicholas G. Gamse (#1018297)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 434-5000; Fax: (202) 434-5029
jschmidtlein@wc.com
thentoff@wc.com
ngamse@wc.com

*Attorneys for WP Company LLC*
*d/b/a The Washington Post*

/s/ Edward B. Schwartz
Edward B. Schwartz (#429690)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000, East Tower
Washington, DC 20005
Tel: (202) 414-9200
eschwartz@reedsmith.com

Michelle A. Mantine (*pro hac vice*)
Reed Smith LLP
Reed Smith Centre, 225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3131
mmantine@reedsmith.com

*Attorneys for The British*
*Broadcasting Corporation*

## CERTIFICATE OF SERVICE

    The undersigned Counsel hereby certifies that on the 13th day of August 2025, notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.

                                                          */s/ John E. Schmidtlein*
                                                          John E. Schmidtlein